UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Laura Gingras,

    Plaintiff,

    v.                                                  Civil Action No.2:12-CV-227

Commissioner of Social Security,

    Defendant.

**OPINION AND ORDER**
(Docs. 10, 14)

Plaintiff Laura Gingras brings this action under 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Gingras's motion to reverse the Commissioner's decision (Doc. 10), and the Commissioner's motion to affirm the same (Doc. 14). For the reasons stated below, the Court DENIES Gingras's motion, and GRANTS the Commissioner's motion.

**Background**

Gingras was fifty years old on her alleged disability onset date of April 14, 2009. She is a widow, and has three adult children. She is educated through high school. From 1989 through 1996, she was a homemaker, caring for her preschool-age children. When her children started school, she returned to work, holding jobs as a shipping and receiving clerk, a delivery truck driver, a flagger, and a licensed nurse assistant.

Gingras lives in an apartment with her two cats and one dog. On an average day, she cares for her pets, tries to go on fifteen-minute walks, makes meals for herself, does dishes and other household chores including the laundry, cooks, and watches movies. (AR 43-45.) She goes grocery shopping with a friend twice a month. (AR 46.) She has no problem dressing, bathing, and grooming herself, and she is able to "[s]ometimes" visit with friends. (AR 45-46.)

Gingras claims she is unable to work because metal objects left inside her after a 1986 surgery cause her abdominal discomfort, bloating, pain, and difficulty walking. (AR 42-43.) She also claims to have trouble sleeping. (AR 47.) The medical record reveals that Gingras has gastrointestinal problems, receiving diagnoses at various times of irritable bowel syndrome, diverticulitis, gastroesophageal reflux disorder, a gastric ulcer, a hernia, diabetes mellitus, asthma, and obesity. She believes she is "maybe" able to stand, walk, or sit for twenty-to-thirty minutes at a time. (AR 48.)

In approximately November 2009, Gingras applied for disability insurance benefits. She alleged that, starting on April 14, 2009, her diverticulosis, internal hemorrhoids, diabetes, hernia, and gastric ulcer prevented her from being able to work. (AR 149.) She stated that she was unable to "lift, walk, or perform 100%" (*id.*), and had problems standing, sitting, balancing, squatting, bending, kneeling, climbing stairs, reaching, and sleeping (AR 171, 173). Gingras's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. Administrative Law Judge ("ALJ") Dory Sutker conducted the hearing on June 7, 2011. (AR 28-53.)

2

Gingras appeared and testified on her own behalf, opting not to be represented by an attorney. (AR 31-33, 35-36.) A vocational expert ("VE") also testified at the hearing.

On August 15, 2011, the ALJ issued a decision finding that Gingras was not disabled under the Social Security Act at any time from her alleged onset date through the date of the decision. (AR 14-22.) Thereafter, the Appeals Council denied Gingras's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Gingras filed the Complaint in this action on October 2, 2012. (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can

still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Gingras had not engaged in substantial gainful activity since her alleged onset date of April 14, 2009. (AR 16.) At step two, the ALJ found that Gingras had the following severe impairments: "gastrointestinal diseases, which have been diagnosed as irritable bowel syndrome, diverticulitis, gastric ulcer, and hiatus hernia, esophageal mobility/gastroesophageal reflux disorder, diabetes mellitus without complications, asthma, and obesity." (AR 16-17.) Conversely, the ALJ found that Gingras's degenerative disc disease of the lumbar spine was nonsevere, and that her pain resulting from "metal surgical instruments inside her abdomen from a previous surgery" was not a medically determinable condition. (AR

4

17.)  At step three, the ALJ found that none of Gingras's impairments, alone or in combination, met or medically equaled a listed impairment.  (AR 17-18.)

Next, the ALJ determined that Gingras had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she was "unable to climb ladders, ropes, and scaffolds[, and] . . . must avoid concentrated exposure to dust, fumes, odors, gases, and poor ventilation."  (AR 18.)  Given this RFC, the ALJ found that Gingras was unable to perform any of her past relevant work.  (AR 20-21.)  Finally, based on testimony from the VE, the ALJ determined that Gingras could perform other jobs existing in significant numbers in the national economy.  (AR 21.)  The ALJ concluded that Gingras had not been under a disability from the alleged onset date of April 14, 2009 through the date of the decision.  (AR 22.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

**I.     Medical Opinions**

Gingras asserts that the ALJ improperly evaluated the medical opinion evidence by "rejecting" the opinions of treating primary care physician Dr. Chris Cornelius and "refusing to consider" the opinion of treating physical therapist ("PT") Brian Finch. (Doc. 10 at 2.) The Commissioner, on the other hand, argues that the ALJ provided "good reasons" for discounting the opinions of these medical providers. (Doc. 14 at 1.)

6

### A. Treating Physician Dr. Cornelius

Dr. Cornelius began treating Gingras for discomfort, bloating, and intermittent diarrhea in approximately November 2008. (AR 152, 361.) He diagnosed gastroesophageal reflux, prescribed Prilosec, and recommended avoidance of tobacco and caffeine. (AR 361.) In a May 2009 treatment note, Dr. Cornelius stated that Gingras "need[ed] FMLA form . . . and disability form filled out," and that, although it was "[u]nclear what [wa]s going on" with Gingras, he completed these forms "as best [he] could with very limited knowledge." (AR 295.) On the same date, Dr. Cornelius opined in a disability form that, due to back pain, Gingras could lift and carry only up to ten pounds, and could never bend or stoop. (AR 299.) He checked off a box indicating that he was "[u]nable to determine" when she could return to work. (*Id.*) Approximately one month later, in June 2009, Dr. Cornelius filled out a "General Assistance and Food Stamps" form, indicating that, starting in April 2009, Gingras had abdominal pain and bloating, which he expected to last three months, and which "justif[ied] exemption from training or employment requirements." (AR 288.) In October 2009, Dr. Cornelius filled out another "General Assistance and Food Stamps" form, this time indicating that he expected Gingras's abdominal pain and bloating to last six months. (AR 377.)

A treating physician's opinion is afforded "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. § 404.1527(c)(2). The deference given to a treating physician's opinion may be reduced in consideration of other factors, including the length and nature of the physician's

7

relationship with the claimant, the extent to which the medical evidence supports the physician's opinion, whether the physician is a specialist, the consistency of the opinion with the rest of the medical record, and any other factors "which tend to . . . contradict the opinion." 20 C.F.R. § 404.1527(c)(2)-(6); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Here, the ALJ afforded only "limited weight" to Dr. Cornelius's opinions. (AR 20.) Substantial evidence supports this finding, as discussed below. Moreover, the ALJ correctly applied the regulatory factors listed above, giving "good reasons" for not crediting these opinions. *See* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). Specifically, the ALJ gave three good reasons for her allocation of limited weight to Dr. Cornelius's opinions. First, the ALJ found that these opinions "simply determine that [Gingras] is disabled," and "[s]uch determinations are reserved to the Commissioner." (AR 20.) In fact, as noted above, Dr. Cornelius's June and October 2009 opinions contain very little detail but yet opine (by checking a box) that Gingras's illnesses "justify exemption from training or employment requirements." (AR 288, 377.) The regulations provide that, "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," because this is an "administrative finding[] that [is] dispositive of [the] case," and thus is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1). As such, the ALJ was not required to

give substantial weight to Dr. Cornelius's conclusion that Gingras's illnesses justified her exemption from employment.

Second, the ALJ found that Dr. Cornelius's opinions "do not seem to indicate a 12-month period of disability." (AR 20.) This was a proper consideration, given that a claimant may be found "disabled" under the Social Security Act only when he or she is unable to work as a result of a medically determinable impairment or combination of impairments "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, the ALJ's finding that Dr. Cornelius's opinions do not indicate that Gingras's medically determinable impairments lasted for at least twelve months is accurate. In May 2009, Dr. Cornelius opined that Gingras's symptoms first appeared in the "[b]eginning of April 2009," but he was "[u]nable to determine" when Gingras would be able to return to work (AR 299); in June 2009, Dr. Cornelius opined that Gingras's illness or injury would last "3 months" (AR 288); and in October 2009, Dr. Cornelius opined that Gingras's illness or injury would last "6 months" (AR 377). Taking these opinions together and reading them most liberally in favor of Gingras, Dr. Cornelius believed that Gingras was unable to work from approximately April 2009 through March 2010, just under a twelve-month period.[1]

---

[1] Dr. Cornelius's May 2009 opinion does not state that Dr. Cornelius believed Gingras was unable to work, and it does not make any opinions regarding Gingras's abdominal problems. (AR 299.) Rather, it states merely that Gingras's back pain appeared in the beginning of April 2009; Gingras stopped working on April 23, 2009; Gingras's back pain had not changed since the symptoms first appeared; and the Doctor was unable to determine when Gingras could return to work. (*Id.*) Thus, the Court is reading this medical record liberally in favor of Gingras by assuming that Dr. Cornelius believed Gingras could not work at the initial appearance of her back pain in April 2009.

9

Third, the ALJ accurately found that Dr. Cornelius's opinions are "inconsistent with the totality of the medical evidence on record." (AR 20.) In support of this finding, the ALJ noted the following facts, with citation to the record, throughout her decision: (1) Gingras's imaging studies revealed few abnormalities to explain her reported abdominal symptoms (AR 17, 19, 295, 306-07, 323, 491); (2) medication was effective at treating Gingras's gastroesophageal reflux disorder (AR 19, 491); and (3) Gingras's daily activities–including walking two miles each day, caring for three pets, cooking meals, doing dishes, cleaning her home, doing laundry and other light housework, shopping for groceries with a friend, and occasionally visiting with friends–required more physical ability than Dr. Cornelius's opinions would allow (AR 18-20 43-47, 166-70, 184-87, 322). These findings are supported by the record (*see, e.g.*, AR 43-47, 166-70, 184-87, 295, 306-07, 322-23, 491), and do not support Dr. Cornelius's opinions that Gingras was unable to work and could not lift or carry more than ten pounds.

Accordingly, the ALJ's analysis of Dr. Cornelius's opinions was proper.

**B.     Treating PT Finch**

Like Dr. Cornelius, Gingras's treating PT, Brian Finch, opined that Gingras could not lift more than ten pounds. (AR 499.) Specifically, Finch stated in an August 2010 Functional Capacity Evaluation Form that Gingras could lift and carry only five pounds. (*Id.*) The ALJ gave "limited weight" to this opinion, on the grounds that: (1) "[Gingras] testified that she [wa]s able to lift 10 pounds occasionally," and the record demonstrates that she could lift "more than 5 pounds"; and (2) Finch was not an "acceptable medical source." (AR 20.)

10

These were proper reasons for discrediting Finch's opinion.  First, the ALJ was correct that Gingras stated she could lift more than five pounds.  At the June 2011 administrative hearing, approximately ten months after Finch opined that Gingras could lift only five pounds, Gingras testified in response to questioning from the ALJ that she was able to lift "maybe 10 pounds" before her abdomen "start[ed] to bother [her]."  (AR 47-48.)  Moreover, in November 2009, approximately three months before Finch opined that Gingras could lift only five pounds, Gingras wrote in a Function Report that she could lift "10-15 [pounds]."  (AR 171.)  Thus, there is substantial evidence to support the ALJ's finding that Gingras herself stated she was able to lift more than five pounds, despite Finch's opinion to the contrary.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (stating that the "substantial evidence" standard is "a very deferential standard of review," and that under this standard, "once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (quotation marks omitted) (emphasis in original).

The ALJ was also correct in stating that Finch was not an "acceptable medical source."  (AR 20.)  "Acceptable medical sources" are defined in the regulations to include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists, 20 C.F.R. § 404.1513(a), whereas sources such as nurse practitioners, chiropractors, and therapists are defined as "other sources," 20 C.F.R. § 404.1513(d)(1).  ALJs are not required to evaluate the opinions of "other sources" in the same manner as required under the treating physician rule.  20 C.F.R. § 404.1527(d)(2); *see* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *Duran v. Comm'r of Soc. Sec.*,

11

296 F. App'x 134, 136 (2d Cir. 2008) (finding no error in ALJ decision to disregard assessment of "medical records physician" because it was not from an acceptable medical source and did not include clinical findings).  Nonetheless, these "other source" opinions are entitled to some weight, given that they may be used "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work."  20 CFR § 404.1513(d)(1); *see* SSR 06-03p, 2006 WL 2329939, at *2.  Social Security Ruling 06-03p requires ALJs to evaluate the opinions of "other" medical sources such as PTs in some depth, stating: "Opinions from these [other] sources . . . who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  *Id.* at *3.  The Ruling directs ALJs to use the same factors for evaluating "other source" opinions as are used to evaluate opinions from "acceptable medical sources," including the length and nature of the source's relationship with the claimant, the extent to which the medical evidence supports the source's opinion, and the consistency of the opinion with the rest of the medical record.  *Id.* at *4 (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).

    Here, the ALJ did not explicitly consider each applicable factor in assessing Finch's opinion.  At most, however, this was harmless error, as the Second Circuit has held that even opinions of acceptable medical sources (which Finch is not) may be discounted for good reason without "slavish recitation of each and every factor."  *Atwater v. Astrue*, No. 12-902-cv, 2013 WL 628072, at *2 (2d Cir. Feb. 21, 2013) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004)); *see* SSR 06-03p, 2006 WL

12

2329939, at *6 (stating that the ALJ should explain the weight given to "other source" opinions, "or otherwise ensure that the . . . decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case").  The ALJ adequately explained the weight afforded to Finch's opinion, finding that it conflicted with other evidence of record, including Gingras's own testimony and statements on disability forms.  Thus, the ALJ did not "simply dismiss[]" Finch's opinion, as Gingras claims.  (Doc. 10 at 9.)

Also noteworthy, the language used in Finch's opinion is vague in its duration and certainty, stating as follows: "*At present*, [Gingras's] capacity *appears [to be]* 5 [pounds] for lift/carry."  (AR 499 (emphases added).)  Furthermore, in contrast to the cases cited in Gingras's motion (*see* Doc. 10 at 8 (citing *Pogozelski v. Barnhart*, No. 03 CV 2914(JG), 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004); *Mejia v. Barnhart* , 261 F. Supp. 2d 142, 148 (E.D.N.Y. 2003))), there does not appear to have been a regular or established treatment relationship between Finch and Gingras.  Gingras does not refer to any treatment records provided by Finch other than the Functional Capacity Evaluation Form containing his opinion.  Nor does Gingras state how frequently she saw Finch, and for how long.  In her original Disability Report, although Gingras listed the medical center with which Finch is affiliated (Rutland Regional Medical Center), she did not list Finch individually as one of her medical providers.  (AR 153.)  Moreover, in that Report and in an updated one, she indicated that the only treatment she received from the Rutland Regional Medical Center was testing and medication, not physical therapy.  (*Id.*; AR 197;

13

*see also* AR 175-78 (failing to list Finch or Rutland Regional Medical Center in another updated Disability Report).)

The ALJ properly considered PT Finch's opinion, and gave adequate reasons for her decision to afford little weight thereto.

## II. Combined Effect of Impairments

Next, Gingras briefly asserts that the ALJ erred in failing to consider the combined effect of her impairments, including her diverticulosis; internal hemorrhoids; diabetes; hernia; gastric ulcer; difficulty standing, sitting, and walking for long periods of time; and difficulty balancing while squatting, bending, or kneeling. (Doc. 10 at 9.) But Gingras fails to point out any particular limitations on her ability to work that allegedly were caused by a combination of these impairments which the ALJ did not address or addressed in an inappropriate manner in her decision. Gingras simply argues: "As a person who has worked hard her whole life, [Gingras] appreciates the value of hard work and would like to be able to work again. Due to [her] combined conditions, however, she finds that she is unable to do so." (*Id.*)

The regulations require that, at step two of the five-step sequential process, the ALJ must consider "the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to be the basis for disability benefits eligibility. 20 C.F.R. § 404.1523; *see also* 404.1520(c). The regulations further require that, in assessing a claimant's RFC, the ALJ must "consider all of [the claimant's] medically determinable impairments of which

14

[they] are aware, including [the claimant's] medically determinable impairments that are not 'severe' . . . ." 20 C.F.R. § 404.1545(a)(2); *see also* 20 C.F.R. § 404.1545(e).

Here, the ALJ specifically acknowledged Gingras's various ailments at step two, including but not limited to her diverticulitis, gastric ulcer, hernia, and diabetes. (AR 16-17.) At step three, the ALJ determined that Gingras did not have "an impairment or combination of impairments" that met or medically equaled a listed impairment. (AR 17.) In assessing Gingras's RFC, the ALJ again considered Gingras's various ailments, and additionally, considered Gingras's allegations of pain and difficulty standing and walking. (AR 19.) Where, as here, the ALJ's decision identifies each of the claimant's impairments, the decision is "not vulnerable to . . . reversal" on grounds that the ALJ failed to consider all of the claimed impairments in combination. *Tinsley v. Barnhart*, Civil No. 3:01CV977(DJS)(TPS), 2005 WL 1413233, at \*6 (D. Conn. June 16, 2005); *see also Rivers v. Astrue*, 280 F. App'x 20, 23 (2d Cir. 2008) (finding that ALJ's statement that claimant's impairments, considered singly or in combination, did not meet a listing demonstrated that ALJ considered cumulative effect of claimant's impairments).

Gingras correctly points out that the ALJ did not discuss Gingras's internal hemorrhoids and problems balancing while squatting, bending, or kneeling, in her decision. But Gingras cites no evidence demonstrating that these ailments affected her ability to work, alone or in combination with other ailments, for a continuous period of twelve months. Moreover, a limitation to only occasional balancing, squatting, bending, and kneeling would have very little impact on the light occupational base. *See* SSR 85-15, 1985 WL 56857, at \*6 (1985) ("Where a person has some limitation in climbing and

15

balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work."); SSR 83-14, 1983 WL 31254, at *2 (1983) ("to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally"); SSR 85-15, 1985 WL 56857, at *7 ("If a person can stoop occasionally . . . in order to lift objects, the sedentary and light occupational base is virtually intact."); *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("It is fairly obvious that . . . a restriction [of only occasional bending] would have very little effect on the ability to perform the full range of work at either the light or sedentary level."); Program Operations Manual System ("POMS") DI 25020.005.A.4.b ("Limitations in kneeling and crawling, in themselves, would have very little impact on the sedentary, light[,] and medium occupational bases.").

The ALJ's decision demonstrates that she considered all of Gingras's relevant impairments, as well as the functional limitations caused by the combination thereof, in determining the severity of Gingras's impairments and in assessing Gingras's RFC. Thus, the ALJ's alleged failure to explicitly consider Gingras's various ailments in combination is not grounds for remand.

## III.     Listing 5.06

Gingras's final argument is that the ALJ erred in finding that Gingras did not meet the requirements of the listing for Inflammatory Bowel Disease, Listing 5.06. At the June 2011 administrative hearing, Gingras testified that, approximately two years prior to that date, she had "put on" a lot of weight, and weighed over 200 pounds. (AR 48.) But

she stated that, in the prior year, she had lost over thirty pounds without trying to lose weight. (*Id.*) She attributed this weight loss to stress related to "having to keep continuously go[] back to doctors." (AR 49.) Gingras argues that the ALJ erred in failing to account for this "significant involuntary weight loss" (Doc. 10 at 10), which "is considered one of the criteria required for a disability to be found [in the Listings] due to Inflammatory Bowel Disease" (*id.* at 11).

> Listing 5.06 requires:
>
> *Inflammatory bowel disease (IBD) documented by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with*:
>
> A. Obstruction of stenotic areas (not adhesions) in the small intestine or colon with proximal dilatation, confirmed by appropriate medically acceptable imaging or in surgery, requiring hospitalization for intestinal decompression or for surgery, and occurring on at least two occasions at least 60 days apart within a consecutive 6–month period;
>
> OR
>
> B. *Two of the following despite continuing treatment as prescribed and occurring within the same consecutive 6–month period*:
>
> 1. Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart; or
>
> 2. Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart; or
>
> 3. Clinically documented tender abdominal mass palpable on physical examination with abdominal pain or cramping that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or
>
> 4. Perineal disease with a draining abscess or fistula, with pain that is not completely controlled by prescribed narcotic medication, present on at least two evaluations at least 60 days apart; or

> 5. *Involuntary weight loss of at least 10 percent from baseline, as computed in pounds, kilograms, or BMI, present on at least two evaluations at least 60 days apart*; or
>
> 6. Need for supplemental daily enteral nutrition via a gastrostomy or daily parenteral nutrition via a central venous catheter.[2]

20 C.F.R. pt. 404, subpt. P, app. 1 § 5.06 (emphases added). Gingras has not met these criteria for numerous reasons. First, she has not demonstrated that she was ever diagnosed with inflammatory bowel disease, whether by endoscopy, biopsy, or any other type of medical imaging or operative finding. Second, as explicitly noted by the ALJ, Gingras has not shown any evidence of "obstruction of stenotic areas in the small intestine or colon with proximal dilatation, anemia, serum albumin of 3.0 g/dL or less, tender abdominal mass, involuntary weight loss, need for supplemental daily nutrition, or perineal disease with a draining abscess or fistula." (AR 18.)

Third, although clearly required to meet or medically equal the Listing, Gingras has not even attempted to demonstrate that she suffered from *at least two* of the six conditions described in Listing 5.06B. Rather, she asserts merely that she has met the criteria of subsection 5 of the Listing regarding "[i]nvoluntary weight loss." (Doc. 10 at 10.) But even that assertion fails because substantial evidence indicates Gingras's weight loss was not "involuntary." A medical record from December 2011 states that Gingras told her medical provider that her "notable" weight loss (AR 619) was "intentional" (AR 620), and that she believed it was "due to exercise and dietary changes" (AR 619).

---

[2] A significant omission, Gingras fails to argue that she has met these very specific criteria of Listing 5.06. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria [of that listing]. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

18

Finally, assuming *arguendo* that Gingras has met the requirements of subsection 5 of Listing 5.06B, she has failed to demonstrate that she has also met one of the other five criteria, as required.

Therefore, the ALJ did not err in finding that Gingras does not have an impairment or combination of impairments meeting or medically equaling Listing 5.06.

## **Conclusion**

For these reasons, the Court DENIES Gingras's motion (Doc. 10), GRANTS the Commissioner's motion (Doc. 14), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 12th day of July, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge